IN THE UNITED STATES DISTRICT COURT
FOR THE Eastern DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:25-cr-3 |
| | ) | |
| BRAD KENNETH SPAFFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS AND MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE**

The United States of America, by and through its attorneys, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

There are no objections to the Presentence Investigation Report ("PSR"), which correctly determined the advisory guidelines range as 57 to 71 months of imprisonment, resulting from an offense level of 25 and criminal history category of I. The government submits that this guidelines range substantially fails to adequately account for the recklessly dangerous nature of the defendant's conduct over a lengthy time period. Considering the applicable sentencing factors under 18 U.S.C. § 3553(a), the government requests an upward variance to a total of 108 months, or 9 years, of imprisonment. The government submits that such sentence would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a), in particular to account for the seriousness of the defendant's conduct, including the extreme risk he posed to others, and the need to protect the public by specifically deterring the defendant.

The defendant made and kept 130 pipe bombs and highly volatile explosives readily accessible at multiple locations at his home, despite having severely injured himself in an

explosives accident years before. A review of his electronic messages showed he expressed a desire to blow up Congress, "shoot up" a school board meeting, and also that he instructed others regarding explosives. He further endangered the lives of federal, state, and local law enforcement officers who were executing a search warrant at his home by lying to them about whether he had explosives—a perhaps unsurprising decision in light of a conversation he had just several weeks prior with a CHS in which he planned to build a turret with a heavy machine gun so he could "mow down" any government officials on his property.

The government also requests the Court impose the maximum available supervise release term of 3 years, and also impose additional special conditions discussed below.

## I.     Procedural Background

On December 10, 2024, the Honorable United States Magistrate Judge Robert J. Krask issued a Criminal Complaint and arrest warrant charging the defendant with possession of a firearm in violation of the National Firearms Act, in violation of 26 U.S.C. § 5861(d). ECF No. 3. The defendant was arrested on December 17, 2024, ECF No. 13, had his initial appearance the following day, ECF No. 8, and was ordered temporarily detained, ECF No. 11. On December 23, 2024, the defendant appeared and waived his right to an immediate detention hearing. ECF No. 15. On December 30, 2024, the Honorable United States Magistrate Judge Lawrence R. Leonard held preliminary and detention hearings. ECF No. 17. Judge Leonard found probable cause, denied the government's motion for detention, and stayed the defendant's release pending the government's appeal of the release order. *Id.* On January 7, 2025, the Court revoked the release order, noting the defendant's "dishonesty and extreme recklessness, even with regard to the safety of others in his own family," and ordered the defendant detained pending trial. ECF No. 24 at 9.

A grand jury returned a two-count indictment against the defendant on January 8, 2025, charging him with possession of an unregistered short barrel rifle (Count 1) and possession of an unregistered destructive device (Count 2), both in violation of 26 U.S.C. § 5861(d).  ECF No. 25.  Defendant was arraigned on January 15, 2025.  ECF No. 29.   Based on the complexity of the case and the defendant's waiver, the Honorable United States Magistrate Judge Douglas E. Miller made the requisite finding under the Speedy Trial Act and set the trial date outside of the normal 70-day speedy trial deadline, on May 28, 2025.  *Id.*  On July 18, 2025, the defendant pleaded guilty before Judge Krask to both counts of the Indictment.  ECF No. 37.  The Court subsequently entered an order accepting his guilty plea.  ECF No. 43.

On October 30, 2025, the Probation Office filed a PSR determining the defendant's offense level as 25 and criminal history category as I, resulting in a guidelines range of 57 to 71 months of imprisonment.  ECF No. 44.  Neither party had any objections to the PSR, and on November 22, 2025, the Probation Office filed a PSR maintaining the original calculations.  ECF No. 48.

II.     **Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility**

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.  USSG § 3E1.1(b).  The PSR has properly applied a two-level decrease in the offense level for acceptance of responsibility under USSG § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater.  Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).  This reduction is already reflected in the PSR's offense level calculation.  PSR ¶ 25.

### III.   Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351–52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

IV.     **Summary of Evidence**

In accordance with the Sentencing Procedures Order, ECF No. 41 at 2–3, below is a summary of the evidence attached to this position paper, and anticipated testimony at the sentencing hearing:

Exhibits attached to Position Paper:

Exhibit 1-1 (disk): Video from defendant's phone (recommend playing with audio)

Exhibit 1-2 (disk): Video from defendant's phone (recommend playing with audio)

Exhibit 1-3 (disk): Video from defendant's phone (recommend playing with audio)

Exhibit 1-4 (disk): Video from defendant's phone (recommend playing with audio)

Exhibit 2: FBI Laboratory Report

Exhibit 3: Excerpt from transcript of recording of conversation between defendant and CHS on October 19, 2024

Exhibit 4: Photographs from defendant's Sentara medical records in July 2021 (submitted under seal) (please note images are graphic)

Exhibit 5: Text message exchange between defendant and his wife (submitted under seal) (messages with sender "Local User" were written by the defendant's wife, and messages with sender "+17573344291" were written by the defendant)

Summary of Testimony: At the sentencing hearing, the government anticipates calling one witness, who is a Special Agent Bomb Technician, Assistant WMD Coordinator at the FBI. The government will offer her as an expert witness. She was present at the search warrant at the defendant's residence and will testify regarding what was located on scene and the characteristics of the materials, and be available to answer any questions the Court may have regarding the same.

## V. The Statutory Sentencing Factors & Upward Variance Request

A. <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

After learning that the defendant was storing a highly volatile and dangerous homemade explosive at his home where he lived with two young children in Smithfield, Virginia, federal, state, and local law enforcement executed a search warrant there in December 2024.  They found the explosive (HMTD) in a Mason jar in the freezer, stored next to popsicles, Go-Gurts, and Hot Pockets.  But they also found 155 improvised explosive devices, including 130 destructive devices or pipe bombs.  The defendant kept most of these carefully labeled and organized his garage along with numerous bomb-making materials, but he also kept a few available for ready transport in a backpack labeled "no lives matter" in the home's master bedroom.  Agents also found an unregistered short barrel rifle in a safe in the bedroom, and a material labeled ETN, an explosive the defendant described in text messaging as more powerful even that HMTD.

The defendant agreed to be interviewed at the beginning of the search of his property, which took several days.  Although he acknowledged owning the short barrel rifle, he repeatedly lied regarding his trove of explosives, claiming he had nothing that could hurt any of the law enforcement officers searching his property that he only dealt with "fireworks," repeating the same lie he told the hospital after he severely injured his own hand in an explosives accident in 2021. **Ex. 4.**

Nine of the improvised explosive devices were retained for analysis by the FBI's explosives laboratory (the remainder, along with other explosives materials, were destroyed for safety reasons).  **Ex. 2.**  Eight of the nine were found to be destructive devices because the defendant used hardened plastic PVC pipe and/or metal or plastic spheres, meaning he specifically manufactured them in a way to "cause property damage, personal injury, and/or death." *Id.* at 5.

6

For example, Device #4, identified in one of the counts to which the defendant pleaded guilty, contained "230 silver and copper colored metal spheres." *Id.* at 13.

Agents also found a notebook in which the defendant had homemade recipes and instructions for making homemade explosives and devices including grenades.[1] The FBI also analyzed the defendant's phone and other electronic devices. They found numerous pieces of evidence of the defendant's bomb making activities, including videos of prior detonations. **Exs. 1-1, 1-2, 1-3, & 1-4**. The defendant's text messaging also contained multiple expressions of his interest in violence towards others, including "[w]e should blow up Congress," "[w]e can blow up … rioters," and that "someone needs to shoot them [school board] meetings up." *See also* **Ex. 5** (defendant discussing shooting members of a certain group).

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The defendant's history and characteristics show that he should have been well-equipped to engage in entirely different decision making. He is 37 years old and was born and raised in Virginia. His parents were married until the defendant was approximately nine years old. While he was raised primarily by his mother thereafter, his father remained an active participant in his life. The defendant had a childhood free of abuse, was provided more than the basic necessities, and spent his time at church, playing sports, and playing music. His father lives in central Virginia and his mother lives nearby in southeastern Virginia. The defendant is the youngest of three siblings and has an older brother and sister; he also has a stepsister. His family members are employed and lack any criminal record or history of substance abuse. The defendant has been married for thirteen years. He and his wife have two children together, now 8 and 6 years old.

---

[1] Excerpts from this notebook were attached to the government's motion regarding detention, if the Court wishes to review its contents. ECF No. 18, Ex. 5.

The defendant graduated from Isle of Wight High School in 2006, and earned his associate degree in business management thereafter. Since obtaining his associate degree, he has worked as a fabricator and in machine shops, most recently in Portsmouth, Virginia.

Regarding physical and mental health, the defendant has no history of substance abuse or mental illness. The defendant severely injured his right hand with explosives in 2021. Other than that, he has no physical health issues.

To his credit, the defendant has no prior convictions or arrests.

C. Other Pertinent Sentencing Factors & Need for Upward Variance

An upward variance is warranted where "the Guidelines range [is] insufficient to serve the § 3553(a) factors." *United States v. Davis*, 130 F.4th 114, 128 (4th Cir. 2025). As the Fourth Circuit recently affirmed, two instances where the advisory guidelines range may be insufficient are where it does "not fully account for [the] threat of serious harm," and does "not provide for adequate specific deterrence." *Id.* These same reasons mandate an upward variance sentence here, and the government accordingly requests an upward variance to 108 months, which is below the ten-year statutory maximum for even just one of the 130 pipe bombs the defendant deliberately manufactured and possessed.

*First*, the advisory guidelines range is insufficient to account for the seriousness of the offense, 18 U.S.C. § 3553(a)(2)(A), namely the extraordinary risk of severe harm the defendant posed to others through his construction and possession of pipe bombs and highly volatile explosives. "[P]ipe bomb[s] are inherently dangerous weapons for which no peaceful purpose can be seriously suggested, regardless of whether the weapons actually are used." *United States v. Dodge*, 846 F. Supp. 181, 184 (D. Conn. 1994). The defendant packed his own pipe bombs full of shrapnel—for which the only purpose would be to injure others—and hand labeled multiple of

8

them as "lethal." He carefully made an extraordinary number of them over the years, color coding and labeling them according to their characteristics.

The defendant kept most of the pipe bombs in the garage next to his home, unsecured, but he kept several more even more readily accessible by anyone in his home in a backpack in his master bedroom. And he stored handmade HMTD—an explosive material that requires nothing more than movement or friction to explode—in a freezer in his garage next to children's food.

The defendant's decision to remain deeply involved with these dangerous items even after the gruesome injury he caused himself in 2021, **Ex. 4**, is difficult to understand. *See United States v. O'Neill*, 144 F. Supp. 3d 428, 437 (W.D.N.Y. 2015) ("Defendant's own injury demonstrates the dangerous nature of his activities."), *aff'd* (2d Cir. Feb. 19, 2016). But what is inconceivable, and particularly disturbing, is his decision to keep these items in locations readily accessible to even his own young children after he knew from his own experience the extreme damage those items can cause. As the Court recognized even at the preliminary detention phase, the defendant has acted with "extreme recklessness even with regard to the safety of others in his own family." ECF No. 24 at 9.

The defendant also acted with disregard for the safety the federal, state, and local law enforcement officers executing the search warrant at his property. He repeatedly lied when asked about potential explosives as officers were searching his property, denying that there was anything that could "hurt them" or "be of concern." He eventually acknowledged having certain items in his garage, but repeated the same lie that he had at the hospital years earlier—that they were innocuous "fireworks." This dishonesty cannot be attributed to merely a desire to avoid getting in trouble, as is likely the case for many defendants who lie to law enforcement, because his statements on scene are entirely consistent with his sentiments in a recorded conversation he had

9

with a CHS shortly before the search, where he described his plan to install a turret on the roof of his home so he could "mow down" government officials on his property with a heavy machine gun. **Ex. 3**.

While the guidelines' former departure provisions have recently been removed and are now contained in Appendix B in an effort to simplify the sentencing process, courts may still consider such reasoning in determining the appropriate sentence. *See* United States Sentencing Commission, Letter (Sept. 3, 2025), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2025/Cover_Letter.pdf. One former departure provision carries particular weight here: former Section 5K2.14, which provides that an upward departure is appropriate if "public . . . safety was significantly endangered." The former commentary to Section 2K2.1, used here to determine the defendant's offense level, referenced this departure provision. App. n.7. It noted an upward departure may be particularly appropriate where destructive devices, which inherently "pose a considerably greater risk to the public welfare" than other weapons, are possessed in a "location or manner" that creates a significant risk of death or injury, as the defendant did here.

*Second*, the advisory guidelines range does not adequately protect the public by specifically deterring the defendant from future criminal conduct. 18 U.S.C. § 3553(a)(2)(B), (C). The defendant appears difficult to specifically deter because of demonstrated commitment to unlawful and dangerous activities. As noted above, he did not cease his involvement with explosives even after the devastating injury to his hand, reflecting an apparent overriding obsession and fascination with explosives. He also has shown a disturbing interest in violence against others for at least over nine years before his arrest, **Ex. 5**, including wanting to blow up Congress, bring back political assassinations, "shoot up" a school board, use a photograph of the President for target practice, mow down government officials, and blow up and kill rioters and members of a certain group.

10

This apparent motive behind his illegal actions—an interest in having the ability to hurt others—renders him more likely to revert to these actions again than someone who engages in isolated or random criminal activity. *See United States v. Rayyan*, 885 F.3d 436, (6th Cir. 2018) ("The content found in [defendant's] messages, phone, and social media profiles all directly related to the § 3553(a) analysis: It shed light on what sort of danger[defendant] presented to the public, how severe his conduct was, and what kind of sentence would be needed to deter other individuals from heading down the same path.").

The need to specifically deter the defendant is also reflected by his lack of interest in complying with the law. He repeatedly lied to the FBI agents who interviewed him, he previously told an associate he was celebrating the Fourth of July "with illegal explosives," and he told the CHS that he hadn't registered his short barrel rifle as required by law simply because he doesn't believe in the law.

The defendant's willingness to involve everyone around him in his illegal activities also demonstrates the need for specific deterrence, as he will likely return to the same company of those same individuals once he is released. As his text messages reveal, he instructed family members and an associate about illegal firearms and explosive materials.[2] For instance, he advised one family member where to buy precursor materials and which chemicals were sensitive. That same family member hid his explosives for him after he disfigured his hand. He told another family member not to register a firearm and to ignore the rules. The defendant told another family member that they should blow up Congress together. That same family member knowingly let him store his highly dangerous HMTD in their freezer, as discussed on a recording with the CHS,

---

[2] The Fourth Circuit recently affirmed a 300-month sentence for a defendant who was convicted of violating a statute prohibiting teaching and training others about making and using destructive devices and explosives. *United States v. Arthur*, No. 24-4306 (4th Cir. Dec. 3, 2025), *available at* https://www.ca4.uscourts.gov/opinions/244306.P.pdf.

but then denied to agents having any knowledge of explosives on the property, or that there was anything that could hurt them.

## VI.     Supervised Release Conditions

The government also requests the Court impose the maximum available supervise release term of 3 years. To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions, as well as recommended special conditions, on pages 22 through 25 of the PSR. The government requests that the Court impose all of those conditions.

The government also requests that the Court also impose additional special conditions prohibiting the defendant from manufacturing firearms, ammunition, destructive devices, or dangerous weapons,[3] and also from owning, possessing, manufacturing, or having access to explosives.[4]

---

[3] The standard conditions only prohibit owning, possession, or having access to the same, but not the process of manufacturing. PSR at 24.

[4] A common definition of "explosive," should the Court wish to include the same, is "any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosive." *See* https://www.atf.gov/explosives. To the extent the defendant believes he has a legitimate use for any explosives, the Court could add "without prior permission of the Probation Officer."

12

VII. **Conclusion**

For the reasons stated above, the government submits that a total sentence of imprisonment of 108 months would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT UNITED STATES ATTORNEY

By: _____/s/_____
E. Rebecca Gantt
Luke Bresnahan
Assistant United States Attorneys
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov
   luke.bresnahan@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on December 11, 2025, I will send an electronic copy of the foregoing to the following:

Jeffrey A. Noll
Senior United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov